IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMAN JOSEPH CLAUDET JR. individually and on behalf of all others similarly situated;<br><br>    Plaintiffs<br><br>v.<br><br>CYTEC RETIREMENT PLAN,<br>CYTEC INDUSTRIES INC., and<br>SOLVAY USA, INC.,<br><br>    Defendants | Civil Action No. _____<br><br>COMPLAINT<br><br>CLASS ACTION |

Plaintiff Aman Joseph Claudet Jr., on his own behalf and on behalf of the class he seeks to represent, alleges as follows:

## NATURE OF THE CLAIMS

1. This case involves the unlawful reduction of vested retirement benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

2. Plaintiff Claudet, a retired beneficiary of the Cytec Retirement Plan, was subjected to an unexpected and unjustified reduction of pension benefits in direct contradiction to the operative plan documents.  According to Defendants, hundreds of other retirees have been subjected to the same or similar reductions.

3. There is significant evidence that Defendants have taken deliberate and purposeful steps, including misrepresentation of key facts to the Internal Revenue Service, to deprive selected groups of retirees and future retirees of a portion of their vested pension income.

4. Although the full extent of the class-wide damages is currently unknown, Plaintiff

estimates that Defendants' unlawful actions will strip hundreds of individuals of rightfully earned pension benefits, and that the total amount in controversy in this action is several million dollars.

## THE PARTIES

5. Aman Joseph Claudet Jr. is an individual of the full age of majority and a resident of St. Charles Parish, Louisiana.

6. Defendant Cytec Retirement Plan (hereinafter "the Plan") is an ERISA governed plan. The Plan currently provides pension benefits to individuals, including Plaintiff, residing within this District. The Plan is a defined benefit plan as defined by ERISA.

7. Defendant Cytec Industries, Inc., (hereinafter "Cytec") is a Delaware corporation licensed to do business in Louisiana and doing business in Louisiana. Its principal business establishment in Louisiana is located at 10800 River Road, Westwego, Louisiana. Cytec is the designated sponsor and administrator of the Plan.

8. Defendant Solvay USA, Inc. (hereinafter "Solvay") is a Delaware corporation licensed to do business in Louisiana and doing business in Louisiana. Its principal business establishment in Louisiana is located at 1275 Airline Highway in Baton Rouge, Louisiana. Solvay is the U.S. subsidiary of Solvay SA, a Belgium-based international conglomerate.

9. On information and belief, Defendants Cytec and/or Solvay made the decision to reduce the pension benefits of Plaintiff and the members of the proposed class in violation of ERISA as set forth below.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

11. A substantial part of the events or omissions giving rise to this claim occurred within this District, Plaintiff resides in this District, and the breach occurred here. Venue is therefore proper in this

Court.  28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2).

12.    To the extent that Plaintiff is required to exhaust administrative remedies in order to bring the claims asserted herein, he has done so by filing a formal written claim for benefits and by filing a written appeal of the denial of benefits.   Plaintiff's written claim and written appeal were denied.

## FACTUAL ALLEGATIONS

13.    Mr. Claudet worked for Cytec (and its predecessor companies) in Louisiana for over thirty years, and retired on December 31, 2001.

14.    At the time of Mr. Claudet's retirement, he was a vested participant in the Cytec Salaried and Nonbargaining Employees' Retirement Plan, effective as of January 1, 1997 (hereinafter the "1997 Plan").

15.    The 1997 Plan operates under, and is governed by, ERISA.

16.    A true and correct copy of the 1997 Plan is attached to this Complaint as Exhibit A.

17.    Prior to January 1, 1997, the operative plan documents were known as the Cytec Salaried and Nonbargaining Employees' Retirement Plan, effective as of January 1, 1994 (hereinafter the "1994 Plan.")

18.    On information and belief, there are no material differences between the 1994 Plan and the 1997 Plan as relevant to the claims asserted in this Complaint and the Plan provisions cited within this Complaint.

19.    Prior to his retirement, the Plan provided Claudet with a Pension Estimate. A true and correct copy of this Pension Estimate is attached to this Complaint as Exhibit B.

20.    The Pension Estimate presents the accrued defined benefit as a "Life Annuity" - a monthly pension payment for the remainder of the retiree's life.   For married participants meeting the Rule of 65 (as did Claudet) other forms of payment are available.

> **50% Spouse Benefit** – This is the normal form of payment for married employees. Your pension is paid for your life in a reduced amount to provide a continuation of 50% of your reduced pension for the lifetime of your surviving spouse. The amount by which your pension is reduced to provide the spouse's benefit is determined by the ages of you and your spouse when payments commence.

(Ex. B, p. 2).

21. The Pension Estimate also provides for a Supplemental Spouse Benefit:

> **Supplemental Spouse Benefit** – If your pension is paid as a 50% Spouse Benefit, you can increase the amount of your spouse's pension by electing supplemental benefits of between 10% and 50% of your pension, To provide these additional benefits, your pension is reduced according to your age and the age of your spouse when payments start.

(Ex. B, p. 2)

22. There is a pitfall inherent with accepting a reduced monthly pension benefit in order to provide the continuing benefit for a surviving spouse. Should the spouse (or beneficiary) predecease the Plan retiree, it becomes impossible, at the reduced payment rate, for the retiree to ever receive a cumulative pension benefit equal to the Life Annuity as set forth on the first page of Pension Estimate. The Plan partially addresses this pitfall, as explained under the heading "Additional Information" on the second page of the Pension Estimate:

> **Pop-Up Feature** – The Plan provides a provision that if your beneficiary dies before you and after your pension has started, your benefit will increase to the Single Life Annuity benefit for the remainder of your life.

(Ex. B, p. 2).

23. Based on the information provided in the Pension Estimate and supporting documentation from the Cytec Industries Summary Plan Descriptions for the 1997 Plan ("1997 SPD"), Claudet selected the 100% continuing benefit for his wife.

24. A true and correct copy of the Retirement Benefits section from the 1997 SPD is

attached to this Complaint as Exhibit C.

25. Plaintiff retired effective January 1, 2002, and began drawing a monthly benefit payment reduced to provide for the 100% continuing benefit for his spouse. The actual monthly payment of $2496.13 was only a few cents from the estimate of $2496.34 set forth in the Pension Estimate (see Ex. B) and represents the Actuarial Equivalent of the accrued Single Life Annuity benefit with 100% continuing benefit for Plaintiff's wife as calculated according to the "Actuarial Equivalent" as defined in the 1997 Plan. (*See* Ex. A, § 1.3)

26. On January 1, 2014, an amended and merged version of the Cytec Retirement Plan was placed into effect (the "2014 Plan")

27. On information and belief, the 2014 Plan materially amended portions of the 1994 and 1997 Plans related to Retirement Benefits.

28. In 2015, the Plan filed an application with the Voluntary Correction Program ("VCP") administered by the Internal Revenue Service ("IRS") to address what it claimed were past operational "failures." The IRS subsequently issued a Compliance letter in response to this VCP, dated October 18, 2015, which is attached hereto as Exhibit "D."

29. This VCP filing contained misleading language and material misstatements regarding the terms of the 1997 Plan and 1994 Plan, including:

   a. The VCP was filed using the language of the 2014 Plan and written in such a way as to lead a reviewer to believe that an actuarial "charge" for the pop-up feature is a defined part of the 1997 Plan and 1994 Plan. In fact, it is not. Under the 1997 Plan and 1994 Plan, there is no reference to the pop-up feature being treated as a "cost."

   b. The period during which the alleged Failure #1 occurred is from "1994 to 2013". This is not a "period," as it constitutes the entire existence of the Cytec Retirement Plan, starting in 1994, until the amended Plan took effect in 2014.

30. On information and belief, the IRS relied on these material misstatements in confirming

the VCP.

31. In December 2015, Solvay acquired Cytec in a merger.

32. On June 16, 2016, Claudet received an unsigned letter dated June 10, 2016 on Solvay stationary, informing him that his pension benefit had been "incorrectly calculated" and that his future pension benefits (and that of his wife should she survive him) would be reduced by $41.39 per month.

33. The letter further directed Claudet to submit any questions to the Solvay H.R. Service Center, and included a phone number and e-mail address.

34. Claudet contacted the Solvay H.R. Service Center, and ultimately exchanged correspondence with Stephanie Zweben, who identified herself as the Cytec Director – US Benefits Strategy and Operations.

35. In a letter from Ms. Zweben dated July 8, 2016, Claudet learned, for the first time, that inclusion of the pop-up feature in the defined benefits was now being characterized as a "cost". Ultimately, Ms. Zweben was not able to answer Claudet's questions to his satisfaction and on August 3, 2016, Claudet wrote a letter to Zweben formally requesting that his pension benefits be readjusted and reinstated to their former amount.

36. On August 30, 2016, Zweben responded by stating that a similar reduction in benefits had been imposed on "1) annuitants who at the time of their retirement chose a Joint & Survivor (J&S) annuity option other than a 50% J&S, and 2) those annuitants who meet the first criteria whose spouses remain alive." Zweben further stated that Claudet's August 3, 2016 letter would be treated as an ERISA claim for benefits, and was therefore being forwarded to the Plan's claims administrator for review.

37. Defendants formally denied the claim for the restoration of full benefits by letter dated October 11, 2016. This letter stated that "In 2015, Cytec Inc. (the "Company") discovered that, from 1994 to 2013, approximately 320 participants (including you [Claudet]) elected a joint and survivor

benefit option containing the pop-up feature pursuant to the Plan and the actuarial cost of the pop-up feature was not applied to their benefits." A true and correct copy of the denial of benefits letter is attached hereto as Exhibit E.

38. Although the October 11, 2016 letter referred to several supposed attachments, Claudet did not actually receive the attachments until December 11, 2016.

39. Claudet decided to submit a formal appeal. Because of the delays in acquiring the attachments to the October 11, 2016 letter, the parties agreed that the deadline for Claudet to appeal the denial of benefits would be February 9, 2017.

40. Claudet submitted a written appeal of the denial of benefits on February 4, 2017.

41. Claudet's appeal was denied in writing by letter dated May 18th, 2017. A true and correct copy of the denial of appeal is attached as Exhibit F.

42. The May 18, 2017 letter states, in part: "Contrary to your assertion, the actuarial charge for the cost of the pop-up in the event a participant elects to receive his or her benefits in the form of any optional joint and survivor annuity except the QJSA has always been a component of the Plan." (*See* Ex. F, Section III).

43. Contrary to this statement, the provision for a "charge" for the pop-up feature is not in the 1994 Plan or the 1997 Plan.

44. The denial of appeal further states that Plaintiff's benefits must be reduced because 26 C.F.R. 1.401(a)-20 of the Treasury regulations requires that the QJSA be the "*most valuable* benefit" offered to retirees. (emphasis added) However, the cited regulation actually uses the language "*at least as valuable* as any other optional form of benefit." *Id.* (emphasis added)

45. On May 31, 2017, Claudet again attempted to obtain the alleged Plan documentation prescribing a "charge" for the Pop-up feature. A true and correct copy of the letter requesting this information is attached to this complaint as Exhibit G.

46. Defendants responded by letter dated July 12, 2017. The response states, in part, that:

> During the past year, in response to your other inquiries and claim for benefits/appeal under the Plan, Cytec Industries Inc. (the "Company") provided you with all of the Plan documents and information that you are entitled to receive under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). As such, no further Plan documents will be provided to you at this time since the Company has satisfied all its obligations under ERISA and you have previously received the additional documentation requested in your recent letter dated May 31, 2017.

A true and correct copy of the July 12, 2017 letter is attached hereto as Exhibit H.

47. Section 13.9 of the 1997 Plan states that "New Jersey law shall determine all questions arising with respect to the provisions of this Plan, except to the extent that federal statutes supersede New Jersey law."

## CLASS ALLEGATIONS

48. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) are satisfied with respect to the class defined herein.

49. The proposed class consists of the following individuals:

> All vested participants in the Cytec Retirement Plan who were subject to a reduction of monthly benefits as a result of the charges imposed due to the "pop-up" feature, as described in the Cytec Retirement Plan 2015 Voluntary Correction Program (and their beneficiaries, if they are deceased or incompetent).

50. Based on Defendants' representations, Plaintiff estimates that there are a minimum of 320 members of the class. The number of class members is so large that joinder of all members is impracticable.

51. There are numerous questions of law and fact common to the class, including at least the following:

   a. Whether Defendants' reduction of the class members' monthly benefits due to the "pop-up" feature was lawful;

    b.    Whether Defendants' decision to reduce benefits was contrary to the terms of the 1997 Plan and/or the 1994 Plan;

    c.    Whether Plaintiffs and members of the class are owed restitution in the form of retroactive benefits under the terms of the 1997 Plan and/or the 1994 Plan;

    d.    Whether Defendants violated their ERISA fiduciary duties;

    e.    Whether the Voluntary Correction Program documents Defendants submitted to the IRS contained material misstatements of fact; and

    f.    What injunctive, declaratory, or other remedies are available to Plaintiff and the class members due to Defendants' unlawful actions.

52. Plaintiff's claim is typical of the claims of the other members of the proposed class. ERISA imposes a uniform standard of conduct on plan fiduciaries including a duty to uniformly administer and interpret common plan language. Therefore, a violation as to one class member is a violation as to all class members.

53. Plaintiff will fairly and adequately protect the interests of the class. He has no interests antagonistic to the claims of the class and has retained competent counsel.

54. Charles Stiegler of Stiegler Law Firm, LLC, and Christopher Williams of Williams Litigation, LLC, will fairly and adequately represent the interests of the class. Both attorneys practice exclusively in the field of labor and employment law and have extensive experience litigating class and collective actions in federal courts. They have investigated Plaintiff's claims and reviewed the relevant plan documents and correspondence prior to filing this action.

55. The prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct with respect to the administration of the Plan. Individual actions may also result in adjudications that would be dispositive of the interests of non-parties or substantially impair such non-parties' ability to protect their interests.

56. Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate injunctive relief, declaratory relief or other appropriate relief with respect to the class as a whole.

57. The common issues outlined above predominate over any issues affecting the individual members of the class.

58. A class action is superior to any other method for the fair and efficient adjudication of this controversy.

59. The class is definable and ascertainable, and potential members may be identified based on Defendants' records.

60. There are no difficulties likely to be encountered in the management of a class action in light of the common plan language at issue.

## FIRST CAUSE OF ACTION

## CLAIM FOR BENEFITS

61. Plaintiff hereby realleges and reincorporates paragraphs 1-60.

62. Section 501(a)(1)(B) of ERISA states that a beneficiary may file a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

63. Defendants have acted contrary to the terms of the 1997 Plan and/or the 1994 Plan by reducing the vested monthly benefits paid to the members of the class.

64. Plaintiff and the members of the class are entitled to recover the benefits due to them.

## SECOND CAUSE OF ACTION

## CLAIM FOR DECLARATORY RELIEF

65. Plaintiff hereby realleges and reincorporates paragraphs 1-64.

66. Plaintiffs herein seek a declaratory judgment setting forth their vested rights to benefits

under the terms of the 1997 Plan and/or the 1994 Plan.

67. ERISA's anti-cutback rule states that a plan may not be amended to reduce a participant's accrued or vested right to benefits. 26 U.S.C. § 411(d)(6).

68. Defendants' decision to reduce the benefits payable to Plaintiff and the members of the class violate this statute.

69. Plaintiff and the class hereby seek a declaration stating that the July 2016 reduction in benefits violates the terms of the 1997 Plan, the 1994 Plan, and the ERISA anti-cutback rule, along with injunctive relief requiring Defendants to continue paying benefits to all class members at the appropriate monthly rate, repayment of all monies withheld since the beginning of the reduction, and other equitable relief as the court deems just and appropriate.

### THIRD CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

70. Plaintiff hereby realleges and reincorporates paragraphs 1-69.

71. Defendant Solvay USA Inc. is a fiduciary of the Plan.

72. Defendant Cytec Industries Inc. is a fiduciary of the Plan.

73. Section 404 of ERISA requires plan fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan."

74. These Defendants acted in a fiduciary capacity to the extent that they administered benefits under the 1997 Plan and the 1994 Plan. For more than twenty years, Defendants administered the 1997 Plan and 1994 Plan without reducing the value of the class members' benefits to account for the pop-up feature. If that was inappropriate under the terms of the 1997 Plan and the 1994 Plan, Defendants violated their fiduciary duties of prudence and diligence.

75. In July 2016, Defendants changed course and decided to reduce the value of the class

members' monthly benefits to account for the pop-up feature. If this was inappropriate under the 1994 Plan or the 1997 Plan, Defendants have violated their fiduciary duty to act in accordance with the governing plan documents.

76. Defendants expressly represented to Plaintiff, at the time of his retirement, that the value of his benefit would be set at a certain level and did not state that it would be reduced to account for the pop-up feature. On information and belief, Defendants made similar representations to the other members of the class.

77. Fiduciaries have a duty not to misrepresent material information. If Defendants' representations regarding the value of Plaintiff's vested benefits were incorrect, then these were material misrepresentations.

78. Defendants have a duty and obligation to present complete and accurate information to employees regarding their benefits under the operative Plan.

79. Defendants' reduction in benefits was contrary to all prior representations and disclosures.

80. Defendants knew or should have known that misrepresentations, inaccuracies and omissions in the information provided to participants were likely to result in participants and beneficiaries making retirement decisions on the basis of the incorrect information.

81. The foregoing breaches of fiduciary duty caused harm to Plaintiff and the members of the class, and Plaintiff and the members of the class seek any and all equitable relief which the Court deems just and appropriate.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

    a. For certification of a class under Fed. R. Civ. P. 23;

    b. The appointment of Plaintiff as class representative;

    c. The appointment of undersigned attorneys as counsel for the class;

d.  A declaration that Plaintiff and the members of the class are entitled to receive unreduced retirement benefits under the terms of the 1994 Plan and the 1997 Plan, and that any subsequent Plan amendment which purported to reduce or adjust those benefits was invalid;

e.  An order requiring Defendants to pay all past due benefits to Plaintiff and the members of the class; and to pay future benefits at an unreduced rate;

f.  Injunctive or other equitable relief requiring Defendants to award to Plaintiff and the members of the class the benefits owed to them;

g.  Disgorgement of any unjust enrichment;

h.  Prejudgment interest on all amounts recovered at the maximum rate allowable by law;

i.  An award to Plaintiff and the members of the class of the costs and expenses of this suit,

j.  An incentive award to the named Plaintiff herein;

k.  An award of reasonable attorneys' fees; and

l.  Such other and further relief as this Court may deem just, equitable and proper.

Respectfully Submitted,

/s Charles J. Stiegler
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

Christopher L. Williams, #32269
WILLIAMS LITIGATION LLC
639 Loyola Ave., Suite 1850
New Orleans, LA 70113
(504) 308-1438 (telephone)
(504) 308-1446 (fax)
Chris@williamslitigation.com