## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AMAN JOSEPH CLAUDET JR. individually and on behalf of all others similarly situated; | ) ) ) | |
| Plaintiff | ) ) | Civil Action No. 17-10027-EEF-JVM |
| v. | ) ) | Judge Eldon Fallon<br>Mag. Judge Janis van Meerveld |
| CYTEC RETIREMENT PLAN,<br>CYTEC INDUSTRIES INC., and<br>SOLVAY USA, INC., | ) ) ) | |
| | ) | CLASS ACTION |
| Defendants | ) ) | |

### MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, APPROVAL OF AMENDED CLASS FOR SETTLEMENT PURPOSES AND APPROVAL OF CLASS NOTICES

The proposed Settlement Agreement ("Agreement" or "Settlement") in this case resolves a complex ERISA class action lawsuit by providing all affected Class Members with Settlement Benefits of seventy-five percent (75%) of their total potential recovery.[1]  That percentage is net – it is not reduced by payment of attorney's fees, settlement administration, mediator fees, or court costs and expenses, all of which are were negotiated separately and are being separately paid by the Defendants.  This is an objectively outstanding result for the members of the Class and is unquestionably "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e).  Both Class Counsel and Defendants respectfully request that the Court enter an order of preliminary approval, authorize Class Notice to the Class Members, approve the amended Class definition for Settlement purposes as set forth herein, and set a date for a Fairness Hearing.[2]  All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement attached as Exhibit A.

---

[1]   A copy of the Settlement Agreement, with exhibits, is attached as Exhibit A.
[2]   While Defendants join in and support the ultimate relief requested in this Motion; Defendants dispute liability and maintain that their actions were lawful and did not violate ERISA.

Named Plaintiff Aman Joseph Claudet, Jr. previously agreed to all underlying material terms of the settlement, including the 75% settlement percentage.  Notwithstanding the diligent and extensive efforts of Class Counsel and Retired Magistrate Judge Sally Shushan (who was the Mediator in this case) over several months to address Mr. Claudet's professed concerns, he has declined to sign the Settlement Agreement despite his agreement to the material terms.  Class Counsel owes a duty to the entire class, not to the named plaintiff alone. Class Counsel has filed this motion based on their independent judgment that the proposed settlement is in the best interests of the Class as a whole.[3]  Both parties have joined in this motion because the settlement is fair, reasonable, and adequate and eliminates the risks to both sides of continued litigation.  If the Settlement is otherwise fair and reasonable, the assent of the Class representative is not required.

## INTRODUCTION

This case involves the payment of pension benefits by the Cytec Retirement Plan ("the Plan").  Starting in 2016, the Plan imposed an actuarial charge to account for the "pop-up" feature included in qualified joint and survivor benefit under the Plan along with some, but not all, of the optional forms of benefit available under the Plan.[4]  Plaintiff alleges that the imposition of this charge is an unlawful cutback of pension benefits and therefore violates the Employee Retirement Income Security Act ("ERISA").  Defendants disagree and have argued that Plaintiff and the Class are entitled to no relief whatsoever.

This matter was contentiously litigated.  Defendants filed a motion to dismiss Plaintiff's claim for breach of fiduciary duty, which was granted.  The parties' Stipulation for Class

---

[3]   Class counsel has a duty to the Class to seek approval of a fair and reasonable settlement in the best interest of a class notwithstanding the objection of a named plaintiff. Fed. Judicial Ctr., Manual for Complex Litig. § 30.44 (3d. ed. 1997); *see also Kincade v. Gen. Tire and Rubber Co.,* 635 F.2d 501, 507-508 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169,  n. 19 (4th Cir. 1975).

[4]   The pop-up is described in more detail below.  In brief, it means that if a retiree's spouse or beneficiary predeceases the retiree, the retiree's monthly benefit payment "pops up" to the sum it would have been if there had been no survivor benefit.

Action Certification (Dkt. 41) was filed on May 16, 2018, wherein the parties stipulated to certify the Class under Rule 23(b)(1), and the Court granted the stipulation on May 21, 2018 (Dkt. 42).  The parties then engaged in extensive written discovery.  Defendants produced more than 7,300 pages of written discovery and emails, along with the underlying actuarial information for the members of the Class.  Plaintiff also served third-party subpoenas on the Defendants' actuarial firm, and Defendants' former plan counsel, which (after several discovery dispute conferences), resulted in production of more than 3,000 additional pages of documents, spreadsheets and emails.  Both sides retained actuarial experts to conduct damages calculations.  The parties engaged in a full-day mediation with Retired Magistrate Judge Sally Shushan on October 16, 2018.  The matter did not resolve during mediation and discovery continued.  However, the parties believed they had the basis for the structure of a Class Settlement and continued, with the help of the Magistrate Judge Shushan, negotiating additional terms and details for a Settlement.  On January 24, 2019, the parties executed a Term Sheet setting forth the material terms of Settlement.  (See Exhibit B).

After the Term Sheet was signed, the parties spent months negotiating the precise terms of the Settlement Agreement and engaged separate actuarial experts to calculate the precise Settlement Benefits to be paid to each retired Class Member under each of the forms of benefits Class Members can select.  Defendants made a number of concessions, including financial/actuarial adjustments that resulted in additional benefits/compensation being paid to Class Members.  The Settlement Agreement provides for class-wide payment of seventy-five percent (75%) of each individual's total potential recovery in this case.  It further provides that attorney's fees, mediator's fees, actuarial fees, the costs of administering the Settlement, and court costs will be paid separately by the Defendants – meaning that the Class Members' Settlement Benefit is subject to *no reduction* for those fees and costs.  Finally, it provides for

an expanded definition of the Class to account for individuals who were not yet receiving pension benefits at the time Settlement was reached. In this regard, any Class Member not yet retired who upon retirement elects a form of benefit that has a charge for the pop-up feature, will also receive 75% of the pop-up charge added back to their monthly benefit amount. The Proposed Class Notices to the Class Members, explaining the terms of the Settlement, are attached hereto as Exhibits C and D.

Under any objective consideration, the Settlement Agreement presents an outstanding result for the Class.  It satisfies the standards of Fed. R. Civ. P. 23(e), and the Court should grant Preliminary Approval as set forth herein.

## FACTUAL BACKGROUND

The Settlement Agreement is complicated, as ERISA is complicated. But the Agreement's underlying material terms are simple.  The Plaintiff, and all Class Members, will receive a settlement constituting 75% of the total relief which they could have achieved through victory in trial in this matter.  Costs and fees will be paid separately, without reducing the Class Members' Settlement Benefit.  Defendants will bear all the costs of administering the settlement. Those are the critical terms of the Settlement; they are fair, reasonable, and represent an excellent result for the Class Members given the complexity of the dispute herein and the uncertainty regarding ultimate success on the merits.

### A.    Explanation of the Dispute

The Plan is a defined benefit plan that pays monthly benefits to eligible participants. The proposed Class consists of retirees who are eligible or may become eligible to receive a monthly pension benefit from the Plan.  Unmarried individuals can elect a single life annuity that ceases upon their death and married individuals can elect a form of benefit that is paid to their spouse or beneficiary after death throughout the life of the surviving spouse or

beneficiary.[5]  Thus, from an actuarial standpoint, payments to the married retiree may continue for a longer period of time.  As a result, the monthly benefit is somewhat smaller – this is how the plan ensures that payments to married and single retirees are actuarially equivalent as generally required under ERISA.  The Plan allows married retirees to choose from various forms of benefit; the surviving spouse may be paid 10% to 100% (in increments of 10% or a 75% option) of the continuing benefit, depending on the retiree's choice.  Along with this choice comes differing levels of monthly payment.  To obtain a 100% surviving spouse benefit (as Mr. Claudet has), the retiree must accept a somewhat smaller monthly benefit at the outset.

One of the features of this Plan is the "pop-up."  The pop-up exists because of the differences in payments to individuals who elect a single life annuity form of benefit vs. individuals who elect a form of benefit that is paid to their spouse or beneficiary after their death.  The pop-up feature applies if the retiree survives his or her spouse.  In this case, the retiree's monthly benefit will "pop up" to the amount which it would have been if he had been single all along.  (This figure will always be higher).  The pop-up is a mandatory feature of the plan, and retirees cannot decline it.

The dispute in this case is whether the Plan may impose an actuarial charge to account for the costs of the pop-up.  Prior to 2016, Defendants never purported to calculate or impose a separate actuarial charge for the pop-up.  Beginning in 2016, Defendants started imposing such actuarial charges.  The amount of the charge varies from Class Member to Class Member depending on his or her age, years in retirement, total pension amount, and form of benefit.  Notably, the actuarial charge did not apply to retirees who chose a 50% surviving spouse benefit (the Qualified Joint and Survivor Annuity, or "QJSA").  Instead, the charges only

---

[5]    Unmarried retirees are also permitted to name a beneficiary who will receive the continuing benefit after their death, but as a practical matter the vast majority of these retirees are married.

applied to individuals who chose the other percentages of the surviving spouse benefit (e.g., 75% or 100%).

The Defendants claim that this charge is justified because 26 C.F.R. § 1.401(a)-20 of the Treasury regulations requires that the QJSA be "at least as valuable as any other optional form of benefit." *Id*. According to the Defendants, the pop-up charge is necessary to equalize the value of the optional forms of benefits with the QJSA. Plaintiff disagrees with this interpretation and believe that the imposition of a pop-up charge in this instance violates the terms of the Plan and also violates ERISA's accrual of benefit rules including ERISA's anti-cutback provision, which forbids any pension plan from reducing a participant's accrued or vested right to benefits and rules requiring advance notice of any amendments reducing the rate of future benefit accrual.[6]

### B.    **Defendants' Defenses**.

Had the parties been unable to resolve the matter, Defendants asserted myriad defenses to Plaintiff's allegations, including defenses to the merits of the case. Specifically, Defendants contended, and continue to do so, that the charge for the pop-up is not only legal but was required under ERISA and various IRS Treasury Regulations in order to maintain the Plan's tax qualified status.

As part of the Settlement Agreement, Defendants specifically deny that they engaged in any wrongdoing, do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against them in the Complaint, denies that the claims asserted by Named Plaintiff and deny that they have any liability whatsoever. The Settlement Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of

---

[6]    29 U.S.C. § 1054(g),(h); *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743-744 (2004).

Defendants, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendants agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.    Nature of Litigation Absent Settlement

The ultimate resolution of this issue will require detailed expert testimony on both liability and damages regarding the true actuarial value of each form of benefit and the effect of the pop-up charge on those calculations.  Litigating this matter all the way through a trial on the merits will also necessarily involve substantial witness testimony and extensive documentary evidence regarding the Plan's processes and analysis in deciding to impose this "pop-up" charge, as well as the Plan's decision prior to the imposition of the pop-up charge to make two separate applications under the Voluntary Correction Program (VCP) administered by the Internal Revenue Service.[7]  Finally, it will require extensive briefing and contested arguments regarding several novel issues for which there is no dispositive legal authority, including the effect of the IRS Treasury Regulations and the meaning of a "cutback" under ERISA in the context of Defendants' imposition of "actuarial charges" in the instant case.

### D.    Procedural History of the Lawsuit

This lawsuit was filed in October 2017.  The proposed class, as initially defined, included only individuals who were retired and currently receiving pension benefits:

> All vested participants in the Cytec Retirement Plan who were subject to a reduction of monthly benefits as a result of the charges imposed due to the "pop-up" feature, as described in the Cytec Retirement Plan 2015 Voluntary Correction Program (and their beneficiaries, if they are deceased or incompetent).

---

[7]    Notably, the IRS approved the VCP applications submitted by Defendants.

The Complaint included three causes of action: (1) a claim for benefits under Section 502 of ERISA; (2) a claim for declaratory relief under the anti-cutback rule; and (3) for breach of fiduciary duty.

Defendants filed an Answer.  Plaintiff then filed a First Amended Complaint, which did not change the substantive allegations but corrected typos in the initial Complaint, including a mistyped statutory reference.

In December 2017, the Fifth Circuit released its decision in *Swenson v. United of Omaha Ins. Co.*, 876 F.3d 809 (5th Cir. 2017), which dismissed a claim for breach of fiduciary duty as duplicative of an ERISA claim for benefits.  Defendants moved to dismiss Plaintiff's third cause for breach of fiduciary duty based on this new authority.  (Dkt. #19).  After substantial briefing and oral argument, this partial motion to dismiss was granted in February 2018.  (Dkt. #31).  The remaining two causes of action were not affected by this Order, and the parties agreed to a stipulated class definition as set forth in the Amended Complaint and to certify the Class under Rule 23(b)(1)..  (Dkt. #42).  Charles J. Stiegler of Stiegler Law Firm, LLC, and Christopher L. Williams of Williams Litigation, LLC were appointed as Class Counsel.  (*Id*. at p. 2).

In the meantime, the parties proceeded with discovery.  Plaintiff served detailed Interrogatories on Defendants, in addition to three separate sets of Requests for Production.  After the parties agreed upon a comprehensive e-discovery protocol, Defendants subsequently produced on a rolling basis over 7,000 pages of emails and other documents, plus spreadsheets containing reams of actuarial data for the hundreds of Class Members.  Plaintiff also served third-party subpoenas on Reed Smith, LLP (the Plan's law firm with respect to the VCP applications) and Willis Towers Watson (the Plan's actuary during the relevant time period), which required extensive meet-and-confer efforts given the myriad of issues,

including privilege and work product issues, associated with the Plan's decisions to impose the "pop-up" charge.[8]  Additionally, Class Counsel enlisted Susan Martin and Jennifer Kroll of Martin & Bonnett LLP, two nationally-recognized ERISA experts, to enroll as co-counsel of record.  (Dkts. #51 and #52). Defendants also served detailed Interrogatories and Requests for Production on Plaintiff.

To assist with the necessary actuarial and damages calculations, Plaintiff retained Jim Holland of Cheiron, Inc., a certified actuary and former chief actuary of the IRS actuarial branch who specializes in working with pension plans and has extensive experience providing expert analysis in complex ERISA actions like the instant case.  Mr. Holland's CV is attached as Exhibit E.

On October 16, 2018, the parties proceeded to a full-day mediation before the Hon. Sally Shushan (Ret.).  (Dkt. #55).  The case did not settle on the date of the mediation, but significant progress was made.  During the mediation, the Defendants agreed to produce additional information regarding the scope of the potential Class damages.  The parties also agreed that any ultimate Settlement would expand the Class definition to include a resolution for those participants who had not yet retired who could, in the future elect a form of benefit that contained a charge for the pop-up.   The Class, as originally defined, only included those individuals who had retired and were receiving pension benefits as of the date the lawsuit was filed.  However, there is a separate group of workers who may be *eligible* to receive pension benefits in the future, but had not yet begun receiving those benefits.[9]  While those individuals were not *yet* affected by the pop-up charge, they *could* be affected by that charge – depending on which form of benefit they ultimately chose upon retirement.  The parties agreed that any

---

[8]   This information was discoverable pursuant to ERISA's "fiduciary exception" to the attorney – client privilege rule.  *See, e.g. In re Occidental Petro. Corp.*, 217 F.3d 293, 296-97, n. 11 (5th Cir. 2000).

[9]   There are several reasons why this could occur, but the simplest example would be someone who had reached the retirement age but had not yet retired.

resolution of these claims should include those individuals as well, and therefore agreed to the following updated Class definition:

> All vested participants in the Plan who elected or have a right to elect an optional joint and survivor benefit and who are, were or would be subject to a reduction of monthly benefits as a result of the imposition of charges attributable to the cost of the "pop-up" feature under the Plan's optional joint and survivor benefits (and their beneficiaries, if they are deceased or incompetent).

Defendants further agreed to provide actuarial information regarding the potential expanded Class Members, to assist with ongoing Settlement calculations and negotiations.

## E.    Description of the Settlement

With Magistrate Shushan's assistance, the parties continued to explore settlement options throughout the fall and winter of 2018.  After additional document production and actuarial analysis, the many months of arms-length negotiations ultimately resulted in a Settlement, the material terms of which include:

- The parties agree to an amended Class definition for settlement purposes as set forth above;

- The total value of the Settlement to Class Members is $1.825 million, divided as follows:

  - For the "in pay" group, $1.540 million allocated among those whose benefits commenced on or before October 1, 2018, which represents the actuarially calculated present value of 75% of their potential damages resulting from the pop-up charge; and

  - For the "not in pay" group, a settlement reflecting the actuarially calculated present value of 75% of their potential damages if that particular member chooses a form of benefit for which a pop-up charge is imposed.  The estimated value of this settlement is $285,000, but that figure cannot be determined with specificity because those individuals had not yet retired.[10]

- Plaintiff will agree to a Release of claims that are or could have been asserted based on the complaint and the proposed Second Amended Complaint which is

---

[10]    Notably, the $285,000 figure is not a guaranteed amount or a "cap" for the "not in pay" group.  Defendants bear the risk that, depending on choices made by Class Members, the actual figure could exceed $285,000.  Plaintiffs bear the risk that based on Class Member choices the actual figure will be less than $285,000.

attached as an exhibit to the Settlement Agreement, which as set forth in the Settlement Agreement, is a limited release covering only those "claims related to the implementation of a charge for the pop-up feature." (Settlement Agreement, § 4.1);

- Defendants will be responsible for administering the Settlement including Class Notice to all Class Members and payment of Settlement Benefits;

- A $5,000 case contribution award will be allocated to Mr. Claudet all subject to the Court's Final Approval;

- Defendants will pay Judge Shushan's mediator fees; and

- Defendants will pay Class Counsel $350,000 in attorney's fees and $37,000 in recoverable costs, fees and costs (subject to court approval) and said amount is addition to the Settlement Benefits payable to Class Members. [11]

The Settlement incorporates several principles insisted upon by Mr. Claudet. First, that all Class Members be treated equally, including both "in pay" and "not in pay" Class Members. Second, that the settlement be a "true" 75% settlement, meaning that the Class Members actually receive 75% of the "whole present-day value" of the pop-up charge. Third, that the attorney's fees, actuary fees, administration fees, and mediator fees be paid separately. And fourth, that any Settlement include "consideration of tax consequences," including the option of a tax deferred rollover for Class Members.

The Settlement Agreement faithfully executes these same principles. *See, e.g.,* Settlement Agreement § 1.42 (defining "Settlement Benefit" by reference to 75% figure); § 4.1 (limiting Release to "claims related to the implementation of a charge for the pop-up feature); § 1.20-1.21 (defining Class Counsel Fee Application); § 2.7 (Defendants to bear costs of Class Notice and administration).

The "Class" is defined as including both the "in pay" group and the "not in pay" group, in accordance with the Second Amended Complaint. (*Id.,* § 1.8). The Settlement Agreement

---

[11]   And as discussed herein, the attorney's fees and costs provided by the Settlement Agreement have no effect whatsoever on the 75% benefit payable to all Plaintiffs.

provides that all Settlement Benefits shall be paid according to the Plan of Allocation, which is attached to the Agreement and made a part thereof. (*Id.*, § 1.33).[12] This Plan of Allocation has been reviewed and analyzed by actuaries on both sides and provides a 75% recovery for all Class Members. This is in accord with the "Settlement Benefit" definition, which expressly incorporates that 75% figure. (*Id.*, § 1.42). The Settlement Agreement provides for procedures for seeking Preliminary Approval (*Id.*, § 2.1); Class Notification and objection (*Id.*, § 2.3, § 2.5), and a Final Fairness Hearing to be set 60 days after the mailing of class-wide notice. (*Id.*, § 2.4). Upon Final Approval, Defendants are required to amend the Plan in accordance with the Settlement Agreement, and make payments in accordance therewith (*Id.*, § 3.1).

Defendants will pay 75% of the value of past reductions (including interest), plus 75% of the actuarial present value of the pop-up charge moving forward. Class Members will have several options regarding how they accept this Settlement Benefit. They may accept the money as a lump sum – i.e., a single payment consisting of the past losses with interest plus the actuarial present value of all *future* expected payments made under this settlement. (This lump sum may also be rolled into a tax-advantaged account such as an IRA, if the retiree wishes). They may accept their past losses in a lump sum with a monthly annuity payment moving forward as well as all benefits past and future expressed as a monthly annuity all with options to continue with additional payments to a surviving spouse at different levels. All payment options are *actuarially* equivalent – that is, they have the same expected value based on the individual plaintiff's age, sex, and expected lifespan. It is wholly up to the individual Class Member to decide which form of benefit to choose. (*Id.*, § 3.3(a) and § 3.3(b)). The

---

[12]   The Plan of Allocation may be deviated from only in the event of an "Individual Mistake," i.e., an error (such as a typographical error) with respect to one individual's pension benefit, years in service, beneficiary's unreported death, etc. Class Counsel must agree to any such change.

Settlement Benefits and optional forms that Class Members may elect have been calculated for each individual Class Member by Plaintiff's actuary, Jim Holland of Cheiron, Inc. and by the Plan's actuaries at Willis Towers Watson.

The parties engaged in months of negotiations with respect to the draft Settlement Agreement.  Mr. Claudet was actively involved.  He attended the mediation in person and presented significant input regarding the method of calculation in the Plan of Allocation and the particular wording used in the Settlement Agreement.  He participated in repeated phone conferences, email exchanges, and several in-person meetings with Class counsel to discuss the specific terms of the Agreement.  At Mr. Claudet's insistence, certain adjustments were made to some retirees' payments to ensure that they received what he understood to be a "true" 75% Settlement.[13]  For that same reason, the parties agreed that the Plan of Allocation – would be the spreadsheet setting forth the precise amount which each individual Class Member will receive from the Settlement.  This Plan of Allocation is incorporated as part of the settlement, at Mr. Claudet's request, to avoid what he contended was uncertainty regarding the 75% figure.  The Plan of Allocation, as written, clearly demonstrates, to the penny, the amount of money which each Class Member will be entitled to receive. Each Class Member will receive an individualized notice advising of his or her individual Settlement Benefit and lump sum and annuity options.

After Class Counsel spent several months attempting to address Mr. Claudet's professed concerns, the parties ultimately sought assistance from Judge Shushan to speak with Mr. Claudet and determine what additional edits to the Settlement Agreement would meet his approval.  Judge Shushan successfully negotiated a few additional edits at Mr.

---

[13]   The total value of these adjustments for the entire class – all of which were in the plaintiffs' favor – were approximately $300 but involved significant actuarial and legal time to calculate.

Claudet's request, which she understood would address any remaining concerns about the terms of the Settlement, but he still declined to sign the Settlement Agreement.

Notwithstanding Mr. Claudet's refusal to sign the Settlement Agreement, all counsel believe that the Settlement is fair and reasonable, and in the best interests of the Class as a whole.  On November 15, 2019, well before the filing of this motion, Class Counsel notified Mr. Claudet of the intention to move forward with Settlement approval based on the interests of the Class as a whole.  He was also informed that he has the right to submit any comments and/or appear at the hearing on this motion; and that he has the right to obtain independent counsel accordingly. He responded indicating his intention to object. Class Counsel will serve a copy of this motion, and exhibits, on Mr. Claudet immediately after filing.

## LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), any class settlement action requires court approval to ensure that it is "fair, reasonable, and adequate."  "Particularly in class action suits, there is an overriding public interest in favor of settlement."[14]

Rule 23(e) sets forth certain procedural requirements which must be satisfied prior to settlement approval.  The first procedural step is determining whether to give notice of the pending settlement to class members.  At this step, the parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  Fed. R. Civ. P. 23(e)(1)(A).  The court should authorize such notice if it finds that it is likely to ultimately give final approval to the settlement.  Fed. R. Civ. P. 23(e)(1)(B).  Once preliminary approval is granted, the Court sets a date for a final fairness hearing, and for class members to file any objections.[15]

---

[14]   *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *accord*, *Smith v. Crystian*, 91 Fed. Appx. 952, n. 3 (5th Cir. 2004) (*per curiam*).

[15]   *See* Manual for Complex Litig., §21.632 - §21.634 (4th ed. 2004); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

In *Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983), the Fifth Circuit set forth six factors for district courts to consider when conducting a Rule 23(e) analysis:

> (1) the existence of fraud or collusion behind the settlement;

> (2) the complexity, expense, and likely duration of the litigation;

> (3) the stage of the proceedings and the amount of discovery completed;

> (4) the probability of plaintiffs' success on the merits;

> (5) the range of possible recovery; and

> (6) the opinions of the class counsel, class representatives, and absent class members.

*Id.* at 172.

Rule 23(e) was amended in 2018 to add an additional factor, which is that the Court consider whether "the [settlement] proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, each of the factors set forth in Rule 23(e) and *Reed* is satisfied. The Court should therefore authorize Class Notice of the pending Settlement to the Class Members and set dates for the issuance of objections and a Fairness Hearing.

## ARGUMENT

The proposed Settlement provides a substantial recovery to all of the Class Members – including additional future Class Members not included in the First Amended Complaint who, depending on their retirement election, may be affected by the "pop-up" charge at issue in this lawsuit. After carefully considering the claims in the case and Defendants' defenses, all of the evidence uncovered in the litigation, and the risks attendant in continuing the litigation, together with the fact that even if the Class were to prevail, significant time would elapse before a victory would result in actual payment to any Class Members (all of whom are or will be retirees), the undersigned believe this Settlement is an excellent result and is fair and

reasonable.

Defendants denied and continue to deny any wrongdoing or ERISA violation. From the outset, Plaintiff and the putative Class Members have faced a number of risks including, but not limited to, risks related to establishing liability under complex ERISA statutory and Plan claims, the risk of class decertification, the risk that the additional "not in pay" class may not be certified absent stipulation, and risks associated with determining and valuing damages. If the case proceeds to full litigation, Defendants have stated that they anticipated filing a summary judgment motion in the absence of a settlement. And even if that motion is denied, the parties would have to spend many months, if not years, engaging in additional expert and fact witness discovery to prepare for a trial on the merits. All of the foregoing would have caused significant additional delay and the likelihood of an appeal would have delayed the case even further. In contrast, the Settlement provides certainty and substantial benefits to the Class Members along with interest on the previous benefit amounts that Plaintiff claims were not properly paid. Class Members will obtain all of this relief years earlier than would otherwise have been possible in the absence of a Settlement.

For all these reasons, and those set forth below, Settlement approval should be granted according to the *Reed* factors.

### A.    The Settlement Is Not the Result of Fraud or Collusion

The first *Reed* factor is whether there is evidence of fraud or collusion. The Court may presume that no fraud or collusion occurred in the absence of evidence to the contrary.[16] Here, the dispute was settled only after significant litigation, discovery, expert analysis, and months of arms-length negotiations with the active participation of Magistrate Shushan. Among other things, the parties engaged in dispositive motion practice, propounded

---

[16]    *Altier v. Worley Catastrophe Response, LLC*, 2012 U.S. Dist. LEXIS 6391, at *48 (E.D. La. Jan. 18, 2012); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010).

significant written discovery, issued third-party subpoenas, and undertook an extensive analysis of liability and damages, before consummating the Settlement.  Both parties retained experienced expert actuaries to calculate the scope of the potential damages.  Settlement was only reached after an initial full-day mediation followed by months of ensuing settlement negotiations.   Magistrate Shushan, who is well experienced in class action litigation, acted as a mediator throughout the settlement negotiation process.[17]  Accordingly, this factor weighs in favor of approving settlement.

### B.      The Complexity, Expense, and Likely Duration of the Litigation

The next *Reed* factor, the "complexity, expense, and likely duration of the litigation," also favors granting approval of the settlement. As the Supreme Court has held, ERISA is a "complex and reticulated statute"[18] and "enormously complex and detailed."[19]  Class actions, by their very nature, necessarily involve complex procedural and substantive issues associated with maintaining claims for class relief.  That is especially true here, as this case lies at the intersection of plan interpretation under ERISA, IRS practices and regulations, the determination of "actuarial costs" and "actuarial equivalence," and also presents legal questions regarding the definition of a pension cutback.  Litigating this action through summary judgment and trial would require spending hundreds of thousands of dollars in additional actuary fees along with hundreds, if not thousands, of hours of attorney time on both sides – without any guarantee of relief for the Class.

Avoiding delay is a factor in every motion for class settlement,[20] and is heightened

---

[17]   *See Welsh v. Navy Fed. Credit Union*, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("extensive arm's-length negotiations" involving retired federal judge as mediator established no fraud or collusion); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 U.S. Dist. LEXIS 69143, at *18-19 (N.D. Tex. Apr. 25, 2018) (mediation with retired district judge "strongly suggests that the settlement was not the result of improper dealings.").

[18]   *Hughes Aircraft v. Jacobson*, 525 U.S. 432, 447 (1999).

[19]   *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

[20]   *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006); *In re Train Derailment near Amite, La.*, 2006 U.S. Dist. LEXIS 32839, at *70 (E.D. La. May 23, 2006).

where, as here, the Class Members are retirees, who have a heightened interest in resolving the claims without years of litigation and appeals.[21]

For a concrete example of this factor, the undersigned counsel need look no further than the case of *Allen v. Honeywell Ret. Earnings Plan,* Case No. 04-cv-424 (D. Ariz.), another ERISA pension class action involving many of the same attorneys.[22]  The *Allen* case was filed in March 2004, and final judgment was entered in July 2012 – more than eight years later.  The *Allen* plaintiffs alone incurred $800,000 in costs.  While this case is unlikely to prove to be as time-consuming and expensive as *Allen*, in any ERISA class action there is a significant risk that the litigation will prove long, unwieldy, and expensive, and that the matter will stretch on for years before the Class members receive any relief whatsoever.  This factor therefore weighs in favor of approving Settlement.

### C.    The Stage of Proceedings and the Amount of Discovery Completed

The next *Reed* factor considers the stage of the proceedings and the amount of discovery that has been completed.  There is no strict rule with respect to this factor, and the Fifth Circuit has approved settlements even in light of "very little formal discovery."[23]  The real question is not the sheer quantity of demands propounded, or the number of discovery motions filed, but "whether the parties have obtained sufficient information about the strength and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case."[24]

---

[21]   *See Stephens v. US Airways Grp., Inc.*, 102 F. Supp. 3d 222, 227 (D.D.C. 2015) (noting that avoidance of delay is critical given the "aging population" of a pension class, and that "approximately 10% of the class members passed away during the course of the litigation.")

[22]   Susan Martin and Jennifer Kroll, co-counsel for Plaintiff herein, represented the plaintiffs in *Allen*.  Howard Shapiro and Stacey Cerrone, counsel for Defendants herein, represented Defendants in *Allen*.

[23]   *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (noting that settlement may be acceptable even with no formal discovery, provided there has been an informal information exchange.)

[24]   *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006).

Here, the parties negotiated an extensive e-discovery protocol and Plaintiff obtained substantial discovery regarding the relevant issues in this case, including, among other things, (a) responsive emails from the accounts of those individuals intimately involved with the imposition of the "pop-up" charge and Defendants' VCP filings, and (b) thousands of other documents relating to Defendants' decision to impose a pop-up charge and submit a VCP filing to the IRS.  Plaintiff also obtained actuarial information necessary to allow the expert to calculate damages for all Class Members and potential Class Members.  Finally, Plaintiff obtained third-party discovery from the Plan's actuaries and former counsel regarding the imposition of the pop-up charge.

Based on this information, Plaintiff's actuary was able to calculate the scope of the class-wide damages not only for Class Members who were already retired but also to determine reasonable estimates of damages for future retirees.  Class Counsel were further able to obtain sufficient information to provide a reasoned judgment regarding the risks of potential litigation and appeal, and the likelihood of success on the merits.  The Court should therefore "rely on counsel's judgment that the information gathered was enough to support a settlement."[25]  This factor therefore supports approval of the Settlement.

**D.     The Probability of Plaintiffs' Success on the Merits and the Range of Possible Recovery**

The fourth *Reed* factor is whether the Class is likely to succeed on the merits.  The Fifth Circuit has called this the "most important factor" in the settlement analysis.[26]  At the same time, however, the Court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial."[27]  This factor must be analyzed in tandem with the fifth *Reed* factor, the range of possible recovery.  The

---

[25]   *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 621 (E.D. La. 2006)

[26]   *Smith v. Crystian*, 91 Fed. App'x 952, n. 3 (5th Cir. 2004) (*per curiam*).

[27]   *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

Court should compare the likelihood of ultimate success with the "range of possible recovery that plaintiffs would realize if they prevailed,"[28] and use those data points to determine whether the settlement is fair and adequate.

"Judicial review [of a class action settlement] also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk."[29]  While Class Counsel are confident in the legal merits of this action, this is no open and shut case. ERISA is a "complex and reticulated statute"[30] and "enormously complex and detailed."[31] ERISA claims for benefits are determined under a deferential "abuse of discretion" review favoring the Plan Administrator.[32]  Here, Defendants imposed a pop-up charge after reviewing the proposed charge with their plan counsel, Reed Smith LLP, as well as the plan actuaries at Willis Tower Watson.  While the Plaintiff believes the decisions to impose that charge constituted a cutback and violated ERISA, there is no clear and unambiguous Fifth Circuit precedent on point, and the case may present a battle of actuarial experts, rendering success far from certain.

Thus, when considering the range of possible success, one possible outcome is *zero*, that is, that the Plan's actions will be found to be ERISA compliant and the pop-up charge found lawful in its entirety.  By contrast, the Settlement will provide Class Members with 75% of the total possible recovery.  Moreover, it will provide Class Members with the option of taking their Settlement Benefits in a number of different ways, including via an ongoing annuity or in a single present-value lump sum, which may be rolled over to an IRA. Depending on each individual Class Member's individual financial situation, the right to take

---

[28]   *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).
[29]   *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).
[30]   *Hughes Aircraft v. Jacobson*, 525 U.S. 432, 447 (1999).
[31]   *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).
[32]   *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000).

the money all at once, or spread over time, may prove a significant boon.[33]  In addition, Class Members who were entitled to distributions as of July 1, 2019 will receive payments retroactive to that date at a very favorable 7 .25% interest rate.[34]

Courts regularly approve class action settlements representing <u>well</u> under 75% of a class's total potential recovery. Settlements have been approved where payments to class members make up nine percent,[35] thirteen percent,[36] sixteen percent,[37] approximately twenty-five percent,[38] or thirty-one percent[39] of the total potential recovery.  The reasonable recovery range varies depending on the specific facts of each case, but a recovery of seventy-five percent of total potential recovery is an excellent result and under any circumstances is fair and reasonable.

This is especially true where, as here, the attorneys' fees, expert fees, administration costs, and other court costs are being paid separately.  The parties first agreed to the 75% settlement figure, then separately negotiated the fee and cost award.  Thus, the Class Members' recovery is not being reduced at all for the attorney's fees and costs incurred for the benefit of the Class.

## E.    The Opinions of The Class Counsel, Class Representatives and Absent Class Members

The final *Reed* factor is the opinion of class counsel, class representatives, and the

---

[33]   If Plaintiff were to prevail at trial, it is not clear whether such a choice would be provided. Participants who are over age 70 1-2 may not roll over lump sum distributions under the Internal Revenue Code.

[34]   The only exception arises if payments are delayed because of an appeal.  In that case, the interest rate through Final Approval will be 7 ½% but following Final Approval to the date of payment, interest shall be at the federal post-judgment interest rate.

[35]   *Bravo v. Gale Triangle, Inc.*, 2017 U.S. Dist. LEXIS 77714, at *31 (C.D. Cal. Feb. 16, 2017).

[36]   *In re Cetera Corp. Sec. Litig.*, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015); A*thale v. Sinotech Energy Ltd.*, 2013 U.S. Dist. LEXIS 199696, at *19-20 (S.D.N.Y. Sept. 4, 2013).

[37]   *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

[38]   *Rosales v. El Rancho Farms*, 2015 U.S. Dist. LEXIS 95756 (E.D. Cal. July 21, 2015); *Pfeifer v. Wawa, Inc.*, 2018 U.S. Dist. LEXIS 155001, at *26 (E.D. Pa. Aug. 31, 2018).

[39]   *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 U.S. Dist. LEXIS 83796, at *19 (C.D. Cal. June 12, 2014).

absent class members.[40]  Here, Class Counsel believes that the settlement is fair and reasonable.  Co-counsel, who are experienced ERISA litigators with a nationwide class action practice, agree.  Class Representative Joe Claudet agreed to the underlying material terms of the Settlement, including the 75% Settlement figure, but has declined to sign the Settlement Agreement herein.  Mr. Claudet's dissent is not enough, standing alone, to justify denying Preliminary Settlement Approval.

"[A]greement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable."[41]  Put otherwise, a class representative has no unilateral right to "veto" a proposed settlement.[42]  Class Counsel have a duty to the entire class, not only to the named Plaintiff.  Where, as here, Class Counsel believes that a proposed Settlement is fair, reasonable, and in the best interests of the Class, that counsel has an *obligation* to seek settlement approval, even if the named Plaintiff disagrees.[43]

Notably, Mr. Claudet agreed to the underlying material terms of the settlement.  He has registered his disapproval with specific provisions and the wording of the Settlement Agreement.  Throughout the last nine months, Class Counsel has made strenuous efforts to work with Mr. Claudet to reach a version of the Agreement that he would find acceptable.  While the specifics of those communications are privileged, they reveal the extensive efforts exerted by Class Counsel to address any and all concerns raised by Mr. Claudet.  Class Counsel summarized these efforts with Magistrate Judge Shushan and will submit these communications for *in camera* review, should the Court request it.

---

[40]   Because notice of the settlement has not been sent to the absent Class Members, this sub-factor is not relevant at this point in time.

[41]   *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982).

[42]   *In re Enron Corp. Securities*, 2003 U.S. Dist. LEXIS 29307, *12 (S.D. Tex. Nov. 5, 2003) (citing Manual for Complex Litigation (Third Ed.) § 30.44 (1995)); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 864 F.Supp 1422, 1430 (S.D.N.Y. 1994) ("To empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement does not appear to serve the best interests of Rule 23...").

[43]   *Newberg on Class Actions* § 19:25 (5th ed. 2016) ("[T]he class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole.").

### F.    The Settlement Treats Class Members Equitably

The final factor is whether the Settlement Agreement "treats class members equitably relative to each other."  This factor is not listed in *Reed* but was added as part of the 2018 amendments to Rule 23(e).[44]

Here, there can be no doubt that the Class Members are being treated equitably.  All will receive a settlement equaling 75% of the value of the pop-up charge which was imposed. This is true of the "in pay" group and the "not in pay" group alike.  The numbers are set forth, in detail, in the Plan of Allocation which is attached to and incorporated into the Settlement Agreement.  The Settlement Agreement also provides for a $5,000 payment to Mr. Claudet in recognition of his services as Class Representative.  Courts have recognized that an additional amount for the Class Representative is justified given the additional work which he must perform in prosecuting the case.[45]

This factor therefore weighs in favor of approving the Settlement.

### G.    No Other Agreements

Rule 23(e)(3), as recently amended, states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  The intent appears to be to identify any "side agreements" between the parties, beyond the Settlement Agreement.[46]  There are no agreements other than the Term Sheet and Settlement Agreement. (*See also* Settlement Agreement, § 5.6) (merger clause clarifying that the Settlement Agreement and Term Sheet are the only agreements between the parties).

### H.    The Proposed Notice Forms Are Adequate

The parties request that the Court approve and authorize the issuance of Class Notices,

---

[44]    *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 U.S. Dist. LEXIS 17029, *22 (M.D. La. Feb. 4, 2019) (recognizing that this factor now must be considered alongside the *Reed* factors).

[45]    *Hays v. Eaton Grp. Attorneys, LLC*, 2019 U.S. Dist. LEXIS 17029, *33 (M.D. La. Feb. 4, 2019).

[46]    *Day v. AMC Corp.*, 2019 U.S. Dist. LEXIS 143021, at *15 (E.D. Ky. July 26, 2019).

in the forms attached as Exs. C and D, via first-class mail.  One Notice Form is to be sent to the "in pay" group, and the other is to be sent to the "not in pay" group.  Defendants have agreed to administer these notices, and to bear the costs of doing so.  Notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections."[47]  The class notice should generally describe the terms of the settlement "in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[48]

The proposed form of Class Notice describes in plain English the terms of the Settlement, including how the Settlement Benefits were calculated based upon the Plan of Allocation, the considerations that led Class Counsel to conclude that the Settlement is fair and adequate, the exact amount of attorneys' fees and costs that will be sought, the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing.  It also provides contact information for Class Counsel should the absent Class Members have any questions.  Defendants have accurate mailing addresses because the Settlement Class consists of retirees who are currently receiving monthly benefits from the Plan.  The notices therefore meet the requirements of the Due Process Clause and Rule 23.

## CONCLUSION

WHEREFORE, for the above-stated reasons, the parties request that this motion be granted and that the Court order all relief requested in the moving papers herein.

Respectfully Submitted,

*/s Charles J. Stiegler*
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC

---

[47]   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).
[48]   *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (citing *In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir. 1987)).

318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

Christopher L. Williams, #32269
WILLIAMS LITIGATION LLC
639 Loyola Ave., Suite 1850
New Orleans, LA 70113
(504) 308-1438 (telephone)
(504) 308-1446 (fax)
Chris@williamslitigation.com

Susan Martin (*Pro Hac Vice*)
Jennifer Kroll (*Pro Hac Vice*)
MARTIN & BONNETT PLLC
4647 N. 32nd St., Suite 185
Phoenix, AZ 85018
(602) 240-6900 (telephone)
(602) 240-2345 (fax)
smartin@martinbonnett.com
jkroll@martinbonnett.com

*Counsel for the Class*

and

Stacey C.S. Cerrone, (#25860)
Jackson Lewis P.C.
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759
stacey.cerrone@jacksonlewis.com

Tulio D. Chirinos (# 35079)
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
Telephone: (504) 310-4088
Facsimile: (504) 310-2022
tchirinos@proskauer.com

*Counsel for Defendants*