UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAUDET | CIVIL ACTION |
| VERSUS | NO. 17-10027 |
| CYTEC RETIREMENT PLAN ET AL | SECTION "L" (1) |

## ORDER & REASONS

Pending before the Court is a Joint Motion for Final Approval of Class Action Settlement, R. Doc. 75, and a Motion for Approval of Attorneys' Fees, Costs and Case Contribution Award, R. Doc. 72. A final fairness was conducted on Wednesday, June 10, 2020 at 9:00 a.m. The Court heard from both the advocates of the Settlement and the objector.

### I.   BACKGROUND

This case arises from a reduction of retirement benefits. R. Doc. 12 at 1. Plaintiff Aman Joseph Claudet is a retired beneficiary of Defendant Cytec Retirement Plan ("the Plan"). R. Doc. 12 at 1. In addition to Cytec Retirement Plan, Plaintiff brought claims against Defendant Cytec Industries, Inc. ("Cytec") and Defendant Solvay USA, Inc. ("Solvay") on behalf of himself and at least 320 similarly situated individuals who were allegedly purposefully deprived of retirement benefits by Defendants. R. Doc. 12 at 1-2.

Mr. Claudet avers as an employee of Cytec, he participated in Cytec's retirement plan, which is governed by the Employee Retirement Income Security Act ("ERISA"). R. Doc. 12 at 3. The plan allows participants to receive a "life annuity" that guarantees a monthly pension payment for the remainder of a retiree's life. R. Doc. 12 at 3. Married retirees can elect to receive a reduced

1

monthly pension benefit in order to provide continuing benefits to a spouse that survives the retiree. R. Doc. 12 at 4. The plan also contains a "pop-up feature," pursuant to which a retiree who is predeceased by his or her spouse or beneficiary will have the monthly benefit increased to the Single Life Annuity benefit for the remainder of his or her life. R. Doc. 12 at 4.

Mr. Claudet retired in 2002 and began receiving benefits under the Plan. R. Doc. 12 at 5. He elected the 100% continuing benefit option for his wife. R. Doc. 12 at 4. In 2014, the Plan was amended, and in 2015, Defendant Solvay acquired Defendant Cytec. R. Doc. 12 at 5. In 2016, Mr. Claudet received a letter from Solvay stating that his pension benefits had been "incorrectly calculated" and that his benefits would be reduced. R. Doc. 12 at 6. Plaintiff sought clarification of this change and through various communications with Defendants, learned that this reduction in benefits, which was approximately $40 per month, was characterized as an actuarial cost associated with the pop-up feature that had erroneously not been charged to the plan participants electing such a feature. R. Docs. 12 at 6, 79 at 4. Accordingly, Mr. Claudet made an ERISA claim for restoration of his benefits. R. Doc. 12 at 6. This claim was denied, and Mr. Claudet appealed the denial. R. Doc. 12 at 7. Mr. Claudet's appeal was also denied. R. Doc. 12 at 6. Having exhausted his administrative appeals, he filed the present class action on behalf of himself and others similarly situated.

Defendants answered the complaint, generally denying liability. R. Doc. 7. Defendants take the position that the charge is justified because the relevant regulations require that a Qualified Joint and Survivor Annuity be "at least as valuable as any other option form of benefit." 26 C.F.R. § 1.401(a)-20. In Defendants view, the pop-up charge equalizes the value of the Qualified Joint and Survivor Annuity with other optional forms of benefits. Further, Defendants raise eleven defenses including failure to state a claim upon which relief can be granted, limitation of remedies

under ERISA, and statute of limitations.  R. Doc. 7.

The Court granted Plaintiff's *ex parte* motion to certify the class on May 16, 2018, defining the class as:

> All vested participants in the Cytec Retirement Plan who from January 1, 1994 to December 31, 2013 elected a joint and survivor benefit option pursuant to the 1994 or 1997 Cytec Retirement Plan and were subject to a reduction of monthly benefits as a result of the actuarial charges of the "pop-up" feature, as described in the Cytec Retirement Plan 2015 Voluntary Correction Program (and their beneficiaries, if they are deceased or incompetent).

R. Doc. 42. The Court approved a Classwide Notice on June 26, 2018. R. Doc. 48.

On January 24, 2019, the Court received notice that the parties had reach a tentative settlement agreement, R. Doc. 59, and the case was administratively stayed pending approval. R. Doc. 60. On February 4, 2020, the parties jointly filed a Motion for Preliminary Approval of the Settlement Agreement, Approval of Amended Class for Settlement Purposes, and Approval of Class Notices. R. Doc. 62.

A preliminary fairness hearing was held on March 6, 2020. R. Doc. 69. At the hearing, the parties explained that after years of contentious litigation and negotiation, they had reached a Settlement Agreement that would provide $1.825 million to settle the claims of all class members. After oral argument, the Court granted preliminary approval, finding that the Settlement was fair, reasonable, adequate, and in the best interest of the class as a whole. The Court further approved the proposed notices designed to alert all class members of their rights and responsibilities with respect to the Settlement.

## II.    PENDING MOTION

### A.  Motion for Final Approval [R. Doc. 75]

As stated above, the Settlement Agreement obligates Defendants to pay approximately $1.825 million to resolve the claims of all class members. Notably, the Settlement Agreement

broadens the Class Definition to include:

> All vested participants in the Plan who elected or have a right to elect an optional joint and survivor benefit and who are, were or would be subject to a reduction of monthly benefits as a result of the imposition of charges attributable to the cost of the "pop-up" feature under the Plan's optional joint and survivor benefits (and their beneficiaries, if they are deceased or incompetent).

R. Doc. 62-2 at 10. This Class includes nearly 1,000 individuals. Essentially, the Settlement covers not only vested plan participants whose benefits were reduced as a result of the pop-up actuarial charge, but also those who will, in the future, receive such a charge. R. Doc. 62-2 at 4.

The Settlement provides for settlement funds to be divided among the "in pay" and "not in pay" groups. R. Doc. 62-2 at 10. The "in pay" group consists of Class Members whose benefits commenced on or before October 1, 2018. $1.540 million is allocated to this group and will compensate these individuals with 75% of the cost arising from the pop-up charge. In contrast, the "not in pay" group consists of individuals who have not yet elected, but may, in the future, choose to elect a form of benefits for which a pop-up charge is applied. Because the number of individuals in this group is unknown, the value of the "not in pay" group's recovery cannot be determined, but the actuarily based estimated value is $285,000.00. R. Doc. 62-2 at 10. Participating Class Members agree to release all claims related to the implementation of the pop-up charge. R. Doc. 62-2 at 11. Class Members can elect to receive Settlement benefits in a variety of ways that are all actuarially equivalent. R. Doc. 62-2 at 12. The Settlement will be administered by Defendants, at Defendant's sole cost, and individual recoveries shall not be reduced by attorney fees or other costs, which were negotiated separately. R. Doc. 62-2 at 3.

Plaintiffs now seek final approval of the Settlement Agreement. Plaintiffs argue that final approval is warranted because the Settlement is fair, reasonable, and adequate, in light of the Rule 23(e)(2) factors. R. Doc. 75-2 at 14. Notably, only one class member objects to the Settlement:

class representative Mr. Claudet. R. Doc. 79.

### B. Motion for Approval of Attorneys' Fees, Costs and Case Contribution Award [R. Doc. 72]

Class Counsel additionally seeks an award of $350,000 in attorney fees, $37,000 in costs, and a $5,000 Case Contribution Award to Mr. Claudet. R. Doc. 72 at 1. Class Counsel stresses that the award will not be deducted from Class Members' recovery under the terms of the Settlement and argues that the requested award is reasonable in light of the twelve *Johnson* factors under either a percentage analysis or a lodestar analysis.

## III. LAW & DISCUSSION

The Court will consider whether final approval is warranted before turning to the requested attorney fees and costs.

### A. Final Approval of the Settlement Agreement

Under Rule 23, "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a "preliminary fairness" evaluation made by the Court. Manual for Complex Litigation § 21.632 (4th ed. 2004). Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness evaluation prior to the issuance of notice. *See, e.g.*, *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). During this evaluation, the Court must "make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation § 21.632. Additionally, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*. During the preliminary evaluation, the Court will examine the submitted materials and determine whether the proposed settlement appears fair on its face. *See In re*

5

*Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981). If the Court finds portions of the proposed settlement problematic, it may indicate preliminary disapproval of the agreement and recommend that the parties make certain revisions or modifications. *See In re Domestic Air Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga.1993).

After granting preliminary approval and allowing the notice process to move forward, the Court conducts a more thorough and rigorous analysis of the same factors in order to determine the appropriateness of granting final approval. Manual for Complex Litigation § 21.6; *see also In re OCA, Inc. Sec. & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). "Counsel for the class and the other settling parties bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." Manual for Complex Litigation § 21.631; *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006).

Having granted preliminary approval on March 6, 2020, the Court is now required to render a determination on the fairness, reasonableness, and adequacy of the Settlement Agreement. Courts may consider a large number of factors when conducting this inquiry. Traditionally, courts in the Fifth Circuit consider the following six factors, from *Reed v. General Motors Corp.*, when making this determination: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. 703 F.2d 170, 172 (5th Cir. 1983).

Additionally, in 2018, Rule 23 was amended to provide uniform guidance regarding this determination. Rule 23(e)(2) instructs courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Advisory Committee's notes to the 2018 amendments, however, clearly indicate that the changes to the rule are meant to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal," rather than "displace any factor" sanctioned by the circuit courts. *Id.* Accordingly, the Court will consider the Rule 23 requirements as informed by the *Reed* factors.

## 1. Adequacy of Representation

The adequacy requirement mandates an inquiry into "the zeal and competence of the representative[s'] counsel and . . . the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001).

The Court has no concerns about the adequacy of representation here. Class Counsel worked diligently to advocate for the entire class, as evidenced by their review of thousands of documents, consultations with an actuarial experts, and the months-long negotiation of a Settlement that provides each class member with 75% of their maximum recovery. The class representative, Mr. Claudet, similarly played an active role in these negotiations and throughout the duration of this litigation. This factor accordingly weighs in favor of approval.

## 2. Arm's Length Negotiation

A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d

7

Cir. 2005); *see also In re Oil Spill by Oil Rig Deepwater Horizon*, MDL 2179, 295 F.R.D. 112, 146 (E.D. La. 2013); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007); *In re Train Derailment Near Amite Louisiana*, MDL 1531, 2006 WL 1561470, at *19 (E.D. La. May 24, 2006). Fraud or collusion, either actual or perceived, may be suspected when the attorneys have made agreements amongst themselves regarding the allocation of attorney fees, especially when the common benefit fee is deducted directly from the settlement fund. Courts must be particularly diligent when evaluating a proposed settlement in which the fee award has been negotiated by class counsel because pecuniary self-interest has long been cited by courts and scholars as a threat to the performance of counsel's professional and fiduciary obligations to class members. *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002); John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 385–93 (2002); David L. Shapiro, *Class Actions: The Class as Party and Client*, 73 Notre Dame L. Rev. 913, 958–60 & n. 132 (1998).

The Court is satisfied that this Settlement Agreement is the product of a hard-fought negotiation between experienced counsel that occurred after significant discovery and motion practice. Further, although attorneys' fees and costs were negotiated by class counsel, raising the specter of "pecuniary self interest," these sums will be not be deducted from the overall Settlement funds directed to Plaintiffs' recovery, and the requested fees are subject to Court approval. Accordingly, this factor weighs in favor of final approval.

### 3.  Adequacy of Relief

Determining whether the proposed relief is adequate requires the Court to consider several of the *Reed* factors, namely, (1) the complexity, expense, and likely duration of the litigation, (2) the stage of the proceedings, (3) plaintiffs' probability of success on the merits, (4) the range of

possible recovery, and (5) the opinions of class counsel, class representatives, and absent class members. Here, these factors all indicate that the proposed relief is adequate. The Court discusses each factor in turn.

### a. The Complexity, Expense, and Likely Duration of the Litigation

This factor requires courts to compare the benefits and risks of the proposed settlement as well as the potential future relief in light of the uncertainties of the litigation. *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 147.

This case has been active for almost three years, during which the parties have grappled with complex questions of law and fact. The case involves the application of ERISA and presents complicated questions involving plan interpretation, actuarial costs, and pension payments. Thousands of documents have been reviewed and the parties have spent hundreds of hours developing their respective cases with the help of actuarial experts. Proceeding to trial in this case would greatly increase the number of hours worked by attorneys on both sides and generate additional costs without the guarantee of a favorable verdict. Further, the Settlement requires Defendants to bear the expenses associated with Settlement administration in addition to attorneys' fees and costs generated during this litigation. This provision is particularly relevant because, were this case to go to trial, an award of attorneys' fees against the defendant would be at the Court's discretion after a consideration of whether the defendant's actions were made in bad faith and whether such an award would serve as a deterrent, among other factors. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 256, 130 S. Ct. 2149, 2159, 176 L. Ed. 2d 998 (2010). Lastly, proceeding to trial would necessarily delay the resolution of this matter to the detriment of the entire class, which is largely composed of retirees of advances ages. Accordingly, this factor weighs in favor of approval.

### b.   *The Stage of the Proceedings*

The stage of the proceedings and the nature and extent of discovery can be significant factors in evaluating the fairness of a settlement. This factor requires courts to consider "whether the parties have obtained sufficient information to evaluate the merits of the competing positions." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 148 (quoting *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7–12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)). "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* (quoting *In re Educ. Testing Serv.*, 447 F. Supp. 2d at 620-21).

The Settlement Agreement at issue here is the product of almost three years of litigation. During that time, the parties have engaged in extensive discovery, reviewed thousands of documents, consulted fact and expert witnesses, and carefully examined the merits of the case from both sides. This lengthy and deliberate process has provided the parties with sufficient information to craft a mutually agreeable Settlement Agreement. Therefore, this factor also weighs in favor of approval.

### c.   *Plaintiffs' Probability of Success on the Merits*

This factor requires the Court to compare the relief offered by the Settlement and the likely recovery if the case were to proceed to trial. Absent fraud or collusion, the probability of success on the merits has been hailed as the most important *Reed* factor. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). In evaluating the probability of success, "the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a

successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).

The likelihood of recovery if this case were to go to trial is inherently uncertain. Notably, Defendants deny liability of any kind in this matter and would raise a formidable defense at trial. Additionally, the Fifth Circuit has provided little guidance about a key issue in this case; namely, whether the decision to impose an actuarial charge violates ERISA. Although the Settlement provides class members with only 75% of the maximum they could recover at trial, the Court notes that this amount is reasonable in light of the complexities of the case and the very real possibility that proceeding to trial would result in a verdict in favor of Defendants.

#### d. The Range of Possible Recovery

"[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Thus, after determining if any legal or factual obstacles exist, a district court must inquire whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits. When considering this factor, the Court must remain aware that

> [c]ompromise is the essence of settlement and the court should not make the proponents of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of which concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.

*Nelson v. Waring*, 602 F. Supp. 410, 413 (N.D. Miss. 1983) (quoting *Cotton v. Hilton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Like any settlement, the Settlement Agreement at issue here is a compromise the provides a large group of individuals with a significant, albeit not total, recovery for their alleged injury.

The Settlement provides that each class member will receive 75% of the maximum they could have received, as the terms of the Plan to which the parties are bound imposes a "hard cap on recovery." R. Doc. 75-2 at 20. This amount is free of costs and attorneys' fees, both of which are to be borne by the Defendants. Further, class members have the option to receive settlement funds in a lump-sum payment or an ongoing annuity, which allows class members to select the method of recovery that best comports with their "individual financial situation." R. Doc. 75-2 at 20. The Court finds that 75% is clearly within the range of possible recovery and accordingly, this factor weighs in favor of final approval.

### e.    The Opinions of Class Counsel, Class Representatives, and Absent Class Members

Class Counsel is intimately familiar with the case and the Settlement Agreement, and therefore the Court will give weight to Class Counsel's opinion regarding the fairness of the Settlement. *See Cotton*, 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties."). Class Counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). However, the Court's deference must not be so great that it blindly follows Class Counsel's recommendations. *Id.* Rather, the Court must give Class Counsel's recommendations appropriate weight in light of all the factors surrounding the Settlement. *Id.* (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215-16 (5th Cir. 1978), and *Saylor v. Lindsley*, 456 F. 2d 896, 900–01 (2d Cir. 1972)).

Here, Class Counsel strongly supports the Settlement and believes it is fair and reasonable with respect to the entire class. However, Class Representative Mr. Claudet has declined to participate in the Settlement. The Court recognizes Mr. Claudet's decision but declines to allow this sole dissenter from derailing the entire Settlement, which provides a substantial recovery to a

large number of affected individuals. Additionally, no other class members have objected to the Settlement, indicating that the Settlement is broadly agreeable.

### 4. Equitable Treatment of Class Members

This Rule 23 factor requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(d). This inquiry involves a determination of "whether the apportionment of relief among class members takes appropriate account of differences among their claims." Rule 23 (e)(2)(C), (D), Advisory Committee Notes to 2018 Amendments. This factor is clearly satisfied in the instant case, as the Settlement Agreement provides that each class member shall receive 75% percent of their maximum potential recovery, regardless of whether they currently are subject to a pop-up charge or will be subject to such a charge in the future. Further, although the class is comprised of two groups—those "in pay" and those "not in pay"—these groups are treated equitably because members of both groups will receive 75% of their total damages. The in-pay group will receive retroactive benefits to compensate for pop-up charges that were imposed in the past in addition to those that will be imposed in the future. Although the not in pay group will only receive compensation for prospective charges, this is equitable because, having not yet retired, members of this group have not yet incurred any pop-up charges.

### 5. The Objections

Any Class Member who does not opt out may object to the Settlement under Rule 23(e)(4). The absence or small number of objections may provide a helpful indication that the Settlement is fair, reasonable, and adequate. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981); *Pettway*, 576 F.2d at 1216–17 (stating that the higher the number of objectors, the heavier the burden of proving fairness, and ruling that it was an abuse of discretion to approve

13

a settlement opposed by the named plaintiff and 70% of class members); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002) (stating that though class reaction is an indicator of class member support, courts must not place too much dependence on a small number of objections); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt–Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1532-34 (2004) (cautioning that reliance on low opt-out and objection numbers in any given case may be misplaced given that the authors found opt-out and objection rates to be "trivially small in the mass of cases"). However, a court may approve a class action settlement even if opposition exists. *See Ayers v. Thompson*, 358 F.3d 356, 368-73 (5th Cir. 2004) ("That several class members desire broader relief . . . does not prevent judicial approval of this settlement agreement, which promises substantial relief to the class."). Nevertheless, courts must independently examine all objections to determine if they have merit and whether they raise questions regarding the fairness of settlement. *See In re Corrugated Container*, 643 F.2d at 217-18.

Courts have held that objections must be sufficiently clear and unambiguous for court consideration; otherwise the party will be deemed to have waived their objection. *Luevano v. Campbell*, 93 F.R.D. 68, 77 (D.D.C. 1981). Moreover, objectors must comply with procedural requirements stipulated in the Settlement Agreement, such as filing a written statement of objection with the court in advance of the hearing and giving notice of intent to appear at the fairness hearing. However, the court has discretion to permit objections at the fairness hearing even if the party wishing to voice an objection has not filed a written statement in advance. *See e.g., In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, MDL 991, 1994 WL 599525, at *4-5 (E.D. La. Nov. 1, 1994); *In re Prudential–Bache Energy Income P'ships Sec. Litig.*, 815 F. Supp. 177, 179 (E.D. La. 1993). Objections ought to focus on the fairness, reasonableness, and adequacy

14

of the agreement, rather than "renegotiate terms of the settlement based on individual preferences." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 152.

Mr. Claudet is the sole objector in this case, although as the class representative, he submits his objection "on behalf of the entire class." R. Doc. 79 at 3. Mr. Claudet explains that in his opinion, informed by access to discovery documents, extensive communication with counsel, and participation in the negotiation process, the "evidence is overwhelming, that the reductions in pension payments at issue were illegal." R. Doc. 79 at 4. He describes the Settlement, which provides for only a 75% recovery, as akin to "a thief stealing money from you and, when, caught red-handed, says it is really his money but will give 75% of it back if you help him." R. Doc. 79 at 4. He further explains that although he participated in negotiations of the Settlement Agreement, the ultimate Agreement contains features he disagrees with. He explains that the negotiations convinced him "that the primary aim in the settlement agreement was, not to provide fair relief to the class, but to satisfy the aims of the company." R. Doc. 79 at 7. Ultimately, he advocates for the "simplest settlement: Payment for 75% of benefits withheld, with interest, plus initiation or resumption of monthly payments with the addition of 75% of the charge attributed to the pop-up feature." R. Doc. 79 at 7. He explains that this would require the class to be treated as one group (rather than "in pay" and "not in pay" groups) and that Defendants would have to "modify calculations so that the charge for the pop-up feature is reduced by 75% going forward" in addition to paying interest. R. Doc. 79 at 8.

Mr. Claudet addressed the Court at the Final Fairness Hearing on June 10, 2020, explaining his material objections to the Settlement and elucidating particular issues raised in his written objection. Class Counsel responded to his objections both in writing, R. Doc. 82, and orally at the Final Fairness Hearing. Class Counsel contends that Mr. Claudet has failed to consider the

15

possibility that, were this case to go to trial, Defendants could prevail. Further, Class Counsel explains that the claims process that Mr. Claudet characterizes as unnecessarily complicated is actually beneficial to the class in that it allows class members to elect between three methods of receiving Settlement Funds. Mr. Claudet's proposed method, which involves a lump sum payment for retroactive charges and an annuity for prospective charges, is one available option.

At the outset, the Court recognizes the significant time and effort Mr. Claudet has invested in this litigation and the zeal with which he has represented the entire class. Mr. Claudet has been heavily involved in the litigation, mediation, and negotiation of the Settlement Agreement at issue here. His objections are articulate and thoughtful. Nevertheless, he has not persuaded the Court that the Settlement is unfair, unreasonable, or inadequate. As an initial matter, Mr. Claudet does not object to the value of the Settlement or argue that any of its material terms are unfair. Instead, he takes issue with the manner in which Settlement funds are dispersed. However, as Class Counsel indicates, Mr. Claudet's preferred method of payment is available to all Class Members, who also have the option of choosing other payment methods that may better suit their individual financial circumstances.

Further, Mr. Claudet's objection does not address the very real possibility that a trial on the merits could leave approximately 1,000 individuals without any recovery what so ever. Notably, the Settlement obligates Defendants to bear all fees and costs independently from funding the Settlement itself, which is significant because even if Plaintiffs were to achieve a favorable verdict at trial, they may not be entitled to receive attorney fees and costs from Defendants. Accordingly, in the face of this complexity and uncertainty of litigation, the Settlement seems fair.

Moreover, to the extent Mr. Claudet believes the categorization of class members as "in pay" and "not in pay" renders the Settlement inequitable, the Court disagrees. Mr. Claudet suggests

16

that as currently defined, the class is comprised of individuals who may never receive settlement benefits. However, it appears as though this objection is founded on a misunderstanding about who is included in the "not in pay" group. The "not in pay" group consists of individuals who were not retirees as of October 1, 2018, but who will retire at some point in the future. While it is true that *some* future retirees may never reap the benefits of this Settlement, that is because some future retirees may never elect a pension option for which a pop-up charge is imposed. These future retirees will receive nothing because they will suffer no damages. Because the class is limited to those individuals who elect an option for which the challenged charge is imposed, Mr. Claudet's argument lacks merit.

Lastly, the Court also rejects the argument that approval should be denied because Mr. Claudet did not consent to the term sheet upon which the settlement was ultimately based. Mr. Claudet has provided numerous documents detailing the communications between himself and Class Counsel during the negotiation of this Settlement, and it appears to the Court as though Mr. Claudet was appraised of developments in the negotiation. R. Doc. 38. 43–50. Additionally, it appears as though Mr. Claudet's concerns were addressed, many of his proposals implemented, and explanations provided for requests that were impossible to achieve. Accordingly, the Court is not swayed by Mr. Claudet's objections.

### 6. Class Notice

Additionally, approval of a class settlement under Rule 23 requires that the proposed class have received adequate notice of the settlement. Rule 23(c)(2)(b) requires that class members receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(b). Further, due process requires that notice to class members be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

17

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). Here, notice forms were mailed to the last known addresses of each Class Member. Written in plain English, these forms appraised Class Members of their legal rights and responsibilities, and advised them of the identity of Class Counsel and their right to representation. The Court is satisfied that the notice program employed in the instant case comports with due process and Rule 23.

Based on the foregoing, the Court is satisfied that the Settlement is fair, reasonable, and adequate and accordingly, final approval is warranted.

### B. Motion for Attorney Fees, Costs, and Class Contribution Award [R. Doc. 72]

At this juncture, the Court turns to the issue of attorney fees and costs.

#### 1. Attorney Fees

"[U]nder the 'American Rule,' the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quotation omitted). Likewise, the attorney for the prevailing litigant must generally look to his or her own client for payment of attorneys' fees. Since the nineteenth century, however, the Supreme Court has recognized an equitable exception to this rule, known as the common fund or common benefit doctrine, that permits the creation of a common fund in order to pay reasonable attorney fees for legal services beneficial to persons other than a particular client, thus spreading the cost of the litigation to all beneficiaries. *See In re Zyprexa Prods. Liab. Litig.*,

594 F.3d 113, 128 (2d Cir. 2010) (Kaplan, J., concurring).[1] This equitable common fund doctrine was originally, and perhaps still is, most commonly applied to awards of attorney fees in class actions. *See* e.g., 5 William B. Rubenstein, Newberg on Class Actions § 15:53 (5th ed. 2019) (discussing common fund doctrine in context of class actions).

Ultimately, attorney fees and costs, authorized by law or the agreement of the parties, must be reasonable. Fed. R. Civ. P. 23(h). "The decision of an award of attorney fees in a common-fund case is committed to the sound discretion of the trial court, which must consider the unique contours of the case." Manuel for Complex Litigation § 14.121 (4th ed. 2004). Where, as here, an award of attorney fees is negotiated by the parties and proposed to the court, the court must scrutinize the reasonableness of the proposed award, rather than merely "ratify a pre-arranged compact." *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980). In other words, "[a] district court is not bound by the agreement of the parties as to the amount of attorneys' fees. *Id.*

Although courts in the Fifth Circuit have typically relied on the lodestar method to determine the reasonableness of an attorney fee award, the percentage method has been increasing in popularity. The lodestar method entails multiplying the reasonable number of hours expended on the litigation by an adjusted reasonable hourly rate. Many courts and commentators have noted problems with the lodestar method including potential for manipulation, disincentive for an early settlement, reward for excessive and wasteful attorney effort, and confusion and lack of predictability in setting fees. *See* Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a*

---

[1] Some authorities have commented on the "persistent and confusing identification of common-fund recovery as an 'exception' to the American rule on attorneys' fees," noting that in a common fund situation the funds are actually distributed "among those aligned with the plaintiff rather than extract[ed] ... from the defeated adversary." See Restatement (Third) of Restitution § 30 Reporter's Note a (Tentative Draft No. 3, 1994) (quoting Thomas D. Rowe, Jr., *The Legal Theory of Attorney Fee Shifting: A Critical Overview*, 1982 Duke L.J. 651, 662 (1982)). Regardless of specific taxonomy, the common-fund doctrine, as well as the Court's inherent power to assess fees to compensate appointed managing attorneys, constitute departures from the traditional rule that each litigant bears his or her own costs.

*Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Case*s, 18 Geo. J. Legal Ethics 1453, 1456 (2005) (summarizing *Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237 (1985)). In contrast, the percentage method provides more predictability to attorneys and class members or plaintiffs, encourages settlement, and avoids protracted litigation for the sake of racking up hours, thereby reducing the time consumed by the court and the attorneys. *Id.* at 1456–57 (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)); *accord In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).

Although the Fifth Circuit has not explicitly endorsed a pure percentage method, it has approved the use of a blended method when determining attorneys' fees in common benefit cases. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012). The blended method is usually used to ensure that the amount of the common benefit fee established by the percentage method is reasonable. Under the blended method, the fee arrived at by the percentage method is cross-checked by the lodestar method utilizing the twelve factors from *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). If the fee arrived at by the percentage method is within "the ballpark" of the fee that would result from the lodestar method, the reasonableness of the fee is more sustainable. The blended method has been used by many district courts, including this one. *See In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640; *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008); *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525 (N.D. Miss. 2003).

The Court finds the blended percentage approach to be the best method for calculating reasonable attorney fees in this litigation. As such, the Court will (1) determine the value of the benefit claimants receive and assign an initial benchmark percentage, (2) determine whether the

benchmark percentage should be adjusted in light of the *Johnson* factors, and (3) conduct a lodestar analysis to determine whether the fee is indeed reasonable. The Court notes, however, that "[t]he lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d at 652.

### a.   Valuation of Benefit & Determination of Benchmark Percentage

According to the terms of the Settlement Agreement, the total value of the Settlement is estimated to be $1,825,000.00. Specifically, $1,540,000.00 million is allocated to the "in pay" group and will compensate these individuals with 75% of their potential damages arising from the pop-up charge. Although the value of the "not in pay" group's recovery cannot be determined, the estimated value is $285,000.00. R. Doc. 62-2 at 10. Because this represents the total value distributed to Class Members, the Court sees no reason to omit any portion of that fund from consideration with respect to the reasonable amount of attorney fees.

Determining a reasonable benchmark percentage is an inquiry that must be addressed on a case by case basis. An influential empirical study analyzing attorney fees in class action settlements is instructive to this endeavor. *See In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d at 652; *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1012-15 (E.D. Wis. 2010); *Murphy Oil*, 472 F. Supp. 2d at 862-64; *In re Educ. Testing Servs.*, 447 F. Supp. 2d at 630; *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1212 (S.D. Fla. 2006); *In re Cabletron Sys. Inc. Sec. Litig.*, 239 F.R.D. 30, 37 n. 12, 41 (D.N.H. 2006). Theodore Eisenberg and Geoffrey Miller's detailed study, titled *Attorney Fees in Class Action Settlements: An Empirical Study*, investigates the relationship between the amount recovered through a settlement and the award of attorney fees. In particular, it explains that there exists "an

overwhelming correlation between class recovery and attorney fees," and that the benchmark percentage should be determined by considering two specific *Johnson* factors: the customary fee and awards in similar cases. Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Studies 27, 74 (2004).

Here, Class Counsel asks the Court to award $350,000.00 in attorneys' fees, which represents just over nineteen percent of the total value of the Settlement. According to Eisenberg and Miller's study, the mean fee percentage in class actions producing recoveries between $1.4 million and $3.1 million is 26.5%, with a standard deviation of 10.9%. Eisenberg & Miller, *Attorneys' Fees and Expenses in Class Action Settlements*, *supra*, at 73. Further, "fee requests falling within one standard deviation above or below the mean should be viewed as generally reasonable and approved by the court unless reasons are shown to question the fee." *Id.* at 74. In other words, a fee falling between 15.6% (approximately one standard deviation below) and 37.4% (approximately one standard deviation above) is considered reasonable under this metric. The requested fee award constitutes approximately 19% of the value of Settlement and accordingly represents a reasonable benchmark.

### b. *Johnson* Factors

The Court now considers the *Johnson* factors, addressing them in conjunction with the circumstances of this case, to determine whether the requested fee award is reasonable.

### i.   The Time and Labor Required

As explained above, Class Counsel has spent almost 1,000 hours litigating this case, which involved novel questions about a notoriously complex statute. These hours were spent writing, researching, reviewing documents, consulting with experts, and ultimately negotiating a beneficial

class-wide Settlement. Accordingly, this factor weighs in favor of approval.

### ii.      The Novelty and Difficulty of the Questions

This case presents complex and novel questions about the applicability and interpretation of ERISA; namely, whether the challenged pension reduction was a "legitimate actuarial charge or an illicit pension cutback." R. Doc. 72-2 at 10. Accordingly, Class Counsel was required to advocate for their clients and aim for a favorable outcome in the absence of clear guidance from the Fifth Circuit. Thus, this factor weighs in favor of approval.

### iii.      The Skill Required to Perform the Legal Service Properly

The challenging legal questions and the nature of the class action required Class Counsel to have specialized knowledge and legal skill in order to reach a favorable outcome. Specifically, Class Counsel was required to employ this specialized knowledge and legal skill in interpreting complex laws and regulations and calculating damages, which required consultation with actuarial experts. Accordingly, this factor weighs in favor of approval.

### iv.      The Preclusion of Other Employment

Class Counsel in this instant matter is comprised of solo practitioners and attorneys from small firms. Accordingly, undertaking the representation of the instant class necessarily required counsel to both forgo other employment opportunities and invest a significant amount of time, energy, and financial resources into the litigation. Accordingly, this factor weighs in favor of approval.

### v.      The Customary Fee in Similar Actions

Courts in this district routinely award up to one-third of the total settlement award in attorney fees. *In re Harrah's Entm't, Inc.*, No. CIV. A. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998) ("The majority of common fund fee awards fall between twenty and thirty

percent."). Here, the requested award constitutes roughly nineteen percent of the settlement value, which is lower than what the caselaw supports, but not so low as to give the Court pause. Accordingly, this factor weighs in favor of approval.

vi.  <u>Whether the Fee is Fixed or Contingent</u>

Class Counsel litigated this matter on a contingency basis, undertaking significant risk and requiring a substantial financial investment without guaranteed victory. R. Doc. 72-2 at 12. Class Counsel explains it has also spent almost $50,000 litigating this case. Due to the risks associated with the representation, this factor weighs in favor of approval.

vii.  <u>Time Limitations Imposed by the Clients or<br>Circumstances</u>

This case did not involve any unusual time limitations. This factor accordingly has no bearing on the reasonableness of the fee.

viii.  <u>The Amount Involved and the Results Obtained</u>

Class Counsel secured a favorable result for each member of the class. Specifically, the Settlement provides for each Class Member to recover 75% of the maximum amount they could have obtained. Further, because attorney fees were negotiated separately and funded independently from the Settlement, Class Members' recoveries will not be diminished by the award of attorney fees in this case. Accordingly, this factor weighs in favor of approval.

ix.  <u>The Experience, Reputation, and Ability of the Attorneys</u>

The Court has no reason to question the experience, reputation, and ability of the attorneys in this case, all of whom are dedicated professionals with demonstrated commitments to their clients. This factor weighs in favor of approval.

x.  <u>The Undesirability of the Case</u>

The Court recognizes that the complex and novel questions presented in this case may

24

make it "undesirable." To the extent this factor applies, it weighs in favor of approval.

### xi.    The Nature and Length of the Professional Relationship

This factor is neutral, as there did not exist a professional relationship between Class Counsel and Claudet before the initiation of this lawsuit. R. Doc. 72-2 at 14.

### xii.    Awards in Similar Cases

The Court has already noted that courts within this district customarily approve awards of up to one-third of the total settlement value. *See, e.g.*, *In re Harrah's*, 1998 WL 832574, at *4. Attorney fee awards in ERISA class actions within the Fifth Circuit and other jurisdictions further support the conclusion that 19% of the total settlement value is a reasonable award. *See, e.g.*, Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 466 (E.D. Pa. 2008) (awarding 30% of settlement value as attorney fees in an ERISA class action); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (awarding 25% of settlement value as attorney fees in an ERISA class action); *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 167 (N.D.N.Y. 2009) (same); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 861 (N.D. Cal. 2017) (same); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding less than 16% of settlement value as attorney fees in an ERISA class action).

### c.  Lodestar Cross-Check

The final step of the blended method is to cross-check the benchmark percentage with an abbreviated lodestar analysis. *See In re Oil Spill by the Oil Rig Deepwater Horizon*, MDL 2179, 2016 WL 6215974, at *19 (E.D. La. Oct. 25, 2016) (citing *In re Vioxx*, 760 F. Supp. 2d at 659) ("[T]he loadstar cross-check is a streamlined process, avoiding the detailed analysis that goes into a traditional lodestar examination."). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate for the work performed. *Strong v. BellSouth*

*Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). The appropriate hourly rate must be based on "prevailing community standards for attorneys of similar experience in similar cases." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993).

Class Counsel has logged over 950 hours of attorney time during the pendency of the litigation, and paralegals and law clerks billed just over 100 additional hours. R. Doc. 72-2 at 4. Class Counsel suggests using an hourly rate of $350 per hour for the hours worked by Charles Stiegler and Christopher Williams, a rate that is "in line with their years of experience, knowledge, and the going rate for attorneys with comparable experience in the Eastern District of Louisiana." R. Doc. 72-2 at 7. Class Counsel suggests using $750 per hour for hours worked by Susan Martin and $500 per hour for hours worked by Jennifer Kroll, justifying these elevated fees by reference to their legal specialties and nationwide expertise for which there is no applicable prevailing community standard in this district. R. Doc. 72-2 at 7. Class Counsel lastly suggests that $150 per hour is an appropriate rate for the work performed by paralegals and law clerks. The Court agrees that these rates are reasonable.

Class Counsel has submitted time records maintained in electronic billing systems to confirm the hours expended by each attorney or para-professional in this matter. The records reflect that Charles Stiegler worked 320.8 hours, Christopher Williams worked 137.4 hours, Susan Martin worked 246.78 hours, Jennifer Kroll worked 247.6 hours, Trudy Mahabir (paralegal) worked 100.5 hours, and Nick Kuntz (law clerk) worked 1.4 hours. R. Doc. 72-2 at 8–9. The Court agrees that these hours are justified by the complexity of the case and nature of the work performed, which included extensive discovery, consultations, and negotiations. Applying these rates to the

hours billed, the lodestar method reveals an award of $484,540.00.[2] Notably, Class Counsel has requested only $350,000.00, significantly less than what a lodestar calculation would support. Accordingly, the Court concludes that the requested award is reasonable.

**2. Costs**

"Typically, class action counsel who create a common fund for the benefit of the class . . . are entitled to reimbursement of reasonable litigation expenses from that fund." *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, MDL 2328, 2015 WL 4528880, at *18 (E.D. La. July 27, 2015). The reimbursement of costs and expenses seeks not to reward attorneys for their work but restore the status quo. However, the requested expenses may not "cannibalize the entire . . . settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d at 196. Accordingly, the Court must review the estimated expenses for which reimbursement is sought and determine whether the total requested sum is fair to the settlement class.

Here, Class Counsel seeks an award of $37,000.00 in cost reimbursements. R. Doc. 72-2 at 14. Class Counsel explains that although it actually incurred $53,420.60 in costs, Defendants have agreed to pay only $37,000.00 in conjunction with the Settlement. R. Doc. 72-2 at 15. In view of the nature and circumstances of this case, the Court concludes that an award of $37,000.00 is appropriate, particularly because it in no way diminishes the recovery of each individual class member.

---

[2] Class Counsel suggests the lodestar amount, based on these figures, should be $496,920. R. Doc. 72-2 at 9. However, the Court believes this number is overstated by $12,380, and presumes Class Counsel erroneously calculated the lodestar by valuing the work performed by Jennifer Kroll by $550, rather than $500. The Court's calculation is based on the following:

| | |
|---|---|
| Charles Steigler: | 320.8 hours x $350/hour = $112,280.00 |
| Christopher Williams: | 137.4 hours x $350/hour = $48,090.00 |
| Susan Martin: | 246.78 hours x $750/hour = $185,085.00 |
| Jennifer Kroll: | 247.6 hours x $500/hour = $123,800.00 |
| Trudy Mahabir: | 100.5 hours x $150/hour = $15,075.00 |
| Nick Kuntz: | 1.4 hours x $150/hour = $210.00 |

### 3. Class Contribution Award

Lastly, courts "commonly permit payments to class representatives above those received in settlement by class members generally." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367-68 (S.D. Miss. 2003); *see In re Catfish Antitrust Litig.*, MDL 928, 939 F. Supp. 493, 503-04 (N.D. Miss. 1996). Such additional payments are justified in part by the fact that class representatives must be familiar with the case in order to be adequate representatives and are often deposed. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006).

Here, Class Counsel seeks a $5,000 award for Mr. Claudet. Notably, Mr. Claudet has been intimately involved in this litigation from its inception, reviewing documents, communicating with counsel, attending the mediation, and providing constructive feedback throughout the entire process. Accordingly, the Court finds that this award is warranted.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Joint Motion for Final Approval of Class Action Settlement, R. Doc. 75, is **GRANTED**, and the Settlement Agreement is hereby **APPROVED**.

**IT IS FURTHER ORDERED** that the Motion for Approval of Attorneys' Fees, Costs and Case Contribution Award, R. Doc. 72, is **GRANTED**. Counsel are awarded $350,000.00 in attorney fees and $37,000.00 in costs. Class Representative Aman Joseph Claudet is awarded $5,000.00 as a case contribution award. In accordance with the Settlement Agreement, these fees, costs, and awards are to be paid by Defendants, which amounts are in addition to the amounts to be received by Class Members.

New Orleans, Louisiana this 12th day of June, 2020.

28

Eldon E. Fallon
United States District Judge